## Case No. 11,645.

### REED v. CUTTER et al.

[1 Story. 590; 1 2 Robb. Pat. Cas. 81; 4 Law Rep. 342.]

Circuit Court, D. Massachusetts. Oct. Term, 1841.

PATENTS — FIRST INVENTOR — PRIOR USE — DILIGENCE—THEORETICAL INVENTION—DISCLAIMER.

1. Under the patent laws of the United States, the applicant for a patent must be the first, as well as the original inventor; and a subsequent inventor, although an original inventor, is not entitled to a patent, if the invention is perfected, and put into actual use by the first and original inventor; and it is of no consequence, whether the invention is extensively known or used, or whether the knowledge or use thereof is limited to a few persons, or even to the first inventor himself, or is kept a secret by the first inventor.

[Cited in White v. Allen, Case No. 17,535; Coffin v. Ogden, Id. 2,950; Pickering v. McCullough, Id. 11,121; National Cash-Register Co. v. Lamson Consolidated Store-Service Co., 60 Fed. 604.]

2. The decision in Dolland's Case [Boulton v. Bull, 2 H. Bl. 487], that a first and original inventor, who had kept his invention a secret, so that the public had no benefit thereof, could not defeat the patent of a subsequent original inventor, may be a correct exposition of the statute of monopolies (St. 21 Jac. I. c. 3, § 6); but it is not applicable to the patent law of the United States.

3. The language of the patent act of 1836 (chapter 357, § 6 [5 Stat. 123]), "not known or used by others before his or their discovery thereof," does not require, that the invention should be known or used by more than one person, but merely indicates, that the use should be by some other person or persons than the patentee.

[Cited in Allen v. Blunt. Case No. 217; Henry v. Providence Tool Co., Id. 6,384.]

4. Under the patent act of 1836 (chapter 357, § 15), an inventor, who has first actually perfect-ed his invention, will not be deemed to have surreptitiously or unjustly obtained a patent for that, which was in fact first invented by another, unless the latter was, at the time, using reasonable diligence in adapting and perfecting the same. But he, who invents first, is entitled to the prior right, if he is using reasonable diligence in adapting and perfecting the same, although the second inventor has in fact first perfected the same, and first reduced the same to practice in a positive form.

[Cited in Marshall v. Mee, Case No. 9,129; Chandler v. Ladd. Id. 2,593; Davidson v. Lewis, Id. 3,606; Dietz v. Wade, Id. 3,903; White v. Allen, Id. 17,535; Reeves v. Keystone Bridge Co., Id. 11,660; Agawam Woolen Co. v. Jordan, 7 Wall. (74 U. S.) 597, 603; Electric Railroad Signal Co. v. Hall Railroad Signal Co., 6 Fed. 606; Hubel v. Dick, 28 Fed. 139; McCormick Harvesting Mach. Co. v. Minneapolis Harvester Works, 42 Fed. 155. Quoted in Christie v. Seybold, 55 Fed. 75. Cited in Appleton v. Ecaubert, 62 Fed. 747.]

5. An imperfect and incomplete invention, resting in mere theory, or in intellectual notion, or in uncertain experiments, and not actually reduced to practice, and embodied in some distinct machinery, apparatus, manufacture, or composition of matter, is not patentable under the laws of the United States. He is the first inventor in the sense of the patent act of the United States, and entitled to a patent for his invention, who has first perfected and adapted the same to use; and, until the invention is so perfected and adapted to use, it is not patentable.

[Cited in Parkhurst v. Kinsman. Case No. 10,757; Dietz v. Wade, Id. 3,903; Johnson v. Root, Id. 7,409; White v. Allen, Id. 17,535; Coffin v. Ogden, 18 Wall. (85 U. S.) 124; Draper v. Potomska Mills Corporation, Case No. 4,072; Judson v. Bradford, Id. 7,564; Putnam v. Hollender, 6 Fed. 893; Brush v. Condit, 20 Fed. 835, 132 U. S. 48, 10 Sup. Ct. 4; Pacific Cable Ry. Co. v. Butte City St. Ry. Co., 52 Fed. 865. Quoted in Christie v. Seybold, 5 C. C. A. 33, 55 Fed. 75.]

6. It seems, that in a race of diligence between two independent inventors, he, who first reduces his invention to a fixed and positive form, is entitled to a priority of right to a patent therefor.

[Cited in Ellithorp v. Robertson. Case No. 4,408; Dietz v. Wade, Id. 3,903; Electric Railroad Signal Co. v. Hall Railroad Signal Co., 6 Fed. 606. Quoted in Christie v. Seybold, 5 C. C. 33, 55 Fed. 75.]

7. A disclaimer, to be effectual for all intents and purposes, under the act of 1837 (chapter 45, §§ 7, 9 [5 Stat. 193]), must be filed in the patent office before the suit is brought. Unless it is so filed before the suit, the plaintiff will not be entitled to recover costs in such suit, even if he should establish at the trial, that a part of the invention, not disclaimed, has been infringed by the defendant. Where a disclaimer has been filed, either before or after the suit is brought, the plaintiff will not be entitled to the benefit thereof, if he has unreasonably neglected or delayed to enter the same at the patent office; for an unreasonable neglect or delay will constitute a good defence and objection to the suit.

[Cited in Tuck v. Bramhill, Case No. 14,213; Sessions v. Romadka, 145 U. S. 41, 12 Sup. Ct. 801.]

[Cited in Rice v. Garnhart, 34 Wis. 469. Cited in brief in Schillinger v. Cranford, 4 Mackey, 456.]

Case for infringement of two patent rights; one for "a new and useful improvement in the pump"; the second for "a new and useful

1 [Reported by William W. Story, Esq.]

improvement in the cast-iron pump." The declaration contained two counts, one applicable to each patent. The first patent was to Jesse Reed, the plaintiff, and was dated August 5th, 1831. The improvement claimed by this, and which it was alleged the defendants [Elisha P. Cutter and others] had infringed, was described in the specification as follows: "Under the flange is a plate about twelve inches in diameter, of suitable thickness for the strength required; near the circumference of the plate are a sufficient number of holes for wood screws or bolts, that said plate may be attached to any board or plank in whatever place said pump may be used. * * * The lower valve is attached to the lower plate by copper screws or rivets, so that the pump may be taken off to come at the lower valve without disturbing the lower plate or pipe." The words of the claim of that part alleged to have been infringed by the defendants, were as follows: "The bottom plate in a horizontal manner with a valve attached to it, and playing upon said elevation, and the manner of connecting it with the plate, as set forth in the specification." The second patent was to Jesse Reed and Josiah Reed, and was dated 19th November, 1833. Subsequently, Josiah assigned his interest to Jesse. Among other improvements claimed by this last patent is that, which is now in so general use in metal pumps, of letting off the water from the cylinder of the pump, by throwing up the handle. The lower valve is armed with a projection, which, when the handle is thrown up to its greatest extent, opens the valve of the piston, at the same time that the lower valve itself is opened by means of the pressure of this projection against the internal sides of the piston. In this way water in the cylinder may be let off readily, and the important object attained of guarding effectually against the effect of frost in the cold season of the year. It was alleged, that the defendants had infringed this part of the plaintiff's patent. Plea, the general issue, with special matters of defence filed. At the trial evidence was offered tending to show, that the improvement of letting off the water, claimed in the second patent, had been invented and reduced to practice by Anthony D. Richmond, of New Bedford, some time in 1828, and that he had made several pumps containing this improvement, before the date of the plaintiff's patent. It was suggested by the counsel for the plaintiff, that there was evidence tending to rebut this evidence; and a question was raised, as to the degree of use and publicity of a prior invention, which would operate, in point of law, to defeat a bona fide original invention, which had been patented.

Charles Sumner, for plaintiff.

(1) The object of the exclusive privilege of a patent is to secure to the public the communication of a species or mode of industry, which it did not before possess. Therefore the patent of a bona fide original inventor will be valid, unless an invention be shown. which, anterior to the invention of the patentee, was reduced to practice in such a way and to such an extent, as to give the public knowledge of its existence. The statute of the United States of 1836 (chapter 357, § 6) provides, that "any person or persons having invented any new and useful art, machine, &c., not known or used by others, before his or their discovery or invention thereof," and who makes oath, that he verily believes, that "he is the original and first inventor or discoverer," &c., shall be entitled to a patent. In another section of the same statute (section 15), it is provided, that the defendant may give in evidence, "that the patentee was not the original and first inventor or discoverer of the thing patented," &c. If we were to consider the first clause by itself, without reference to that in the 16th section, it would seem clear, that an invention must have been known and used by others, before the discovery of the patentee, in order to defeat the patent. The term "others" would seem to imply general and plural knowledge, in contradistinction to knowledge by an individual. Unless this effect is given to this word, it loses much of its significance. The word, however, is borrowed from the English statute of monopolies, out of which the English patent law is carved. which secures a patent to the first and true inventor of an art, "which others at the time of making such letters patent and grants shall not use." These words have received repeated constructions in England. It has there been decided, that a prior invention, in order to defeat the patent of a subsequent true and original inventor, must have been "generally known"; that it must have been in "public use and operation"; "used openly in public," and not abandoned as useless by the first inventor. See Lewis v. Marling, 10 Barn. & C. 22; s. c., Gods. Supp. 6, 7, 8; Jones v. Pearce, Gods. Supp. 10, 12. Mr. Godson's own language (page 4 of the Supplement) admits the above cases to be law. The statute of the United States of 1793 (chapter 55, § 1) says, "not known or used before the application," &c. These words have received a construction from the supreme court of the United States. Story, J., in delivering the opinion of the court, in Pennock v. Dialogue, 2 Pet. [27 U. S.] 19, said: "We think, then, the true meaning must be, not known or used by the public before the application." McLean, J., in delivering the opinion of the court, in Shaw v. Cooper, 7 Pet. [32 U. S.] 319, said: "The knowledge or use spoken of in the act of 1793 [1 Stat. 318] could have referred to the public only." The words used by the court are broad, explicitly declaring, that the knowledge and use must be by the public. It appears, that in the cases actually before them, the knowledge and use had been derived from and under the patentee, having

crept abroad before he had secured his invention by letters patent. But, it is submitted, that in view of the language employed by the court, and afterwards in the statute, the difference between those cases and the present does not authorize a different construction. How can the court restrain the word "others" to mean only those, who have derived their knowledge from the patentee? Particularly when this word is employed in the English statute, and has there received the construction now contended for? The clause in the 16th section can hardly throw doubt upon this construction. The clause in the 1st section is the granting part of the statute, which is to be construed amply for the citizen, particularly in an act of the present nature. The whole act must be construed, so as to give each clause its fullest effect; and no word or phrase is to be curtailed of its proportions, unless it is essential to a reasonable construction of the whole statute. If, in the present case, it is necessary to abate from any clause of the statute any of the just effect, which such clause would have, if taken by itself, we must restrain the clause in the 16th section; in other words, it must be construed by reference to the granting clause in the 1st section. He must be considered the first and original inventor, who has invented an art or machine, not known or used by others before his discovery thereof. In confirmation of this view is Dolland's Case [Boulton v. Bull], 2 H. Bl. 487, Phil. Pat. 165, where the first inventor reduced his invention to use, but kept it secret, and showed an intention not to give the public the benefit of it. It was the case of an improvement in the object-glass of telescopes, invented by Mr. Hall, but suppressed by him, till Mr. Dolland had subsequently made the same invention, and procured a patent for it, the validity of wh'ch was disputed on the ground, that he was not the first inventor. But the patent was held to be valid. Mr. Phillips (Patents, 165) says, this case must stand on the ground that, as the first inventor did not give the public that advantage which it was the intention of the patent laws to secure, he should not stand in the way of a subsequent inventor, who should be ready to give the public such advantage, at the end of the period provided for by the patent laws. This doctrine was recognized in a subsequent case. Forsyth v. Reviere, Chit. Prerog. 182, note.

The object of the patent law is to promote the progress of useful arts; 1st, by stimulating ingenious minds to make inventions; 2d, to secure to the public the benefit of the inventions, by having the secret fully divulged on the expiration of the patent. It is said, indeed, that the future divulging of the secret is the consideration of the grant of exclusive privileges. Let us bear this in mind in construing these words, "known and used." If the thing be known and used, the public good does not require the interference of the patent law; either to stimulate invent-

ors, or to secure the divulging of the secret, for the invention is already made, and the secret is divulged. If the thing, however, be not so known and used, that the public will eventually have it, as if it be kept an entire secret, like Dolland's glass, or if it be thrown by as useless, or if it be used in private and in a corner, then it will justify the protection of the patent law;—"Dignus vindice nodus." It is effectually reached by its spirit, and is not discarded by its letter. The original inventor, who afterwards bona fide hits upon it, and matures it into something useful, deserves well. The Patent Laws of Austria—section 27 (a), (d), Phil. Pat. 516, 517—provide, that "every discovery, invention, improvement, or change, shall be held as new, if it is not known in the monarchy, either in practice, or by a description of it contained in a work publicly printed."

(2) The counsel for the plaintiff submitted another point, in the words of Mr. Phillips, in his work on Patents (page 395), being a construction, which this acute and learned author has put upon two clauses of the fifteenth section of the patent law of 1836. It was as follows: "If the patentee is the original inventor of the thing patented, his patent shall not be defeated by proof, that another person had anticipated him in making the invention, unless it also be shown, that such person was adapting and perfecting his invention."

Benjamin Rand, for defendants, e contra.

STORY, Circuit Justice, overruled both points, and said:

Under our patent laws, no person, who is not at once the first, as well as the original, inventor, by whom the invention has been perfected and put into actual use, is entitled to a patent. A subsequent inventor, although an original inventor, is not entitled to any patent. If the invention is perfected, and put into actual use by the first and original inventor, it is of no consequence, whether the invention is extensively known or used, or whether the knowledge or use thereof is limited to a few persons, or even to the first inventor himself. It is sufficient, that he is the first inventor, to entitle him to a patent; and no subsequent inventor has a right to deprive him of the right to use his own prior invention. The language of the patent act of 1836 (chapter 357, §§ 6, 15) and of the patent act of 1837 (chapter 45, § 9) fully establishes this construction; and, indeed, this has been the habitual, if not invariable, interpretation of all our patent acts from the origin of the government. See Phil. Pat. (Ed. 1837) pp. 65, 66, c. 6, § 4; Woodcock v. Parker [Case No. 17,971]; Gray v. James [Id. 5,718]; Rutgen v. Kanowers [Id. 11,710]; Evans v. Eaton, 3 Wheat. [16 U. S.] 454; Pennock v. Dialogue, 2 Pet. [27 U. S.] 1, 16, 20, 22. The language of the act of 1836 (chapter 357, § 6), "not known or used by oth-

ers before his or their discovery thereof," has never been supposed to vary this construction, or to require, that the invention should be known to more than one person, if it has been put into actual, practical use. The patent act of 1790 [1 Stat. 109] used the language, "not before known or used," without any adjunct (Act 1790, c. 34, § 1); and the act of 1793 used the language "not known or used before the application" (Act 1793, c. 55, § 1); and the latter act (section 6) also made it a good matter of defence, that the thing patented "had been in use" anterior to the supposed discovery of the patentee. It early became a question in our courts, whether a use by the patentee himself before his application for a patent, would not deprive him of his right to a patent. That question was settled in the negative; and the language of the first section of the act of 1793 (chapter 55) was construed to be qualified and limited in its meaning by that of the sixth section; and the words "not known or used before the application," in the first section, were held to mean, not known or used by the public before the application. See Morris v. Huntingdon [Case No. 9,831]; Pennock v. Dialogue, 2 Pet. [27 U. S.] 1, 18–22; Mellus v. Silsbee [Case No. 9,404]. The case of Pennock v. Dialogue, 2 Pet. [27 U. S.] 1, 18–22, is a direct authority to this effect. And it was probably in reference to that very decision, that the words "by others" were added in the act of 1836 (chapter 357, § 6) by way of explanation of the doubt formerly entertained on the subject. The words "by others" were not designed to denote a plurality of persons, by whom the use should be, but to show, that the use should be by some other person or persons, than the patentee. It would be strange, indeed, if because the first inventor would not permit other persons to know his invention, or to use it, he should thereby be deprived of his right to obtain a patent, and it should devolve upon a subsequent inventor merely from his ignorance of any prior invention or prior use; or that a subsequent inventor should be entitled to a patent, notwithstanding a prior knowledge or use of the invention by one person, and yet should be deprived of it by a like knowledge or use of it by two persons. In Pennock v. Dialogue, 2 Pet. [27 U. S.] 1, 23, the supreme court expressly held, that the sixth section of the patent act of 1793 (chapter 55) then in force, (and on this point the law has not undergone any alteration,) "gives the right to the first and true inventor, and to him only; if known or used before his supposed discovery, he is not the first, although he may be the true inventor; and that is the case, to which the clause looks."

I am aware of Dolland's Case; but I do not consider it to be a just exposition of the patent law of this country, however correctly it may have been decided under that of England. In that case, it seems to have been held, that Dolland was entitled to his patent, because he was an inventor of the thing patented, although there was a prior invention thereof by another person, who, however, had kept it a secret, so that the public had no benefit thereof. And, perhaps, this was not an unjustifiable exposition of the statute of monopolies (St. 21 Jac. I. c. 3, § 6), under which patents are granted in England. But the language of our patent acts is different. The patent act of 1836 (chapter 257, §§ 7, 8, 13, 15, 16) expressly declares, that the applicant for a patent must be the first, as well as an original inventor. The passage cited from Mr. Phillips's work on Patents (page 395), in the sense in which I understand it, is perfectly accurate. He there expressly states, that the party claiming a patent must be the original and first inventor; and that his right to a patent will not be defeated by proof, that another person had anticipated him in making the invention, unless such person "was using reasonable diligence in adapting and perfecting the same." These latter words are copied from the fifteenth section of the act of 1836 (chapter 357) and constitute a qualification of the preceding language of that section; so that an inventor, who has first actually perfected his invention, will not be deemed to have surreptitiously or unjustly obtained a patent for that, which was in fact first invented by another, unless the latter was at the time using reasonable diligence in adapting and perfecting the same. And this I take to be clearly law; for he is the first inventor in the sense of the act, and entitled to a patent for his invention, who has first perfected and adapted the same to use; and until the invention is so perfected and adapted to use, it is not patentable. An imperfect and incomplete invention, resting in mere theory, or in intellectual notion, or in uncertain experiments, and not actually reduced to practice, and embodied in some distinct machinery, apparatus, manufacture, or composition of matter, is not, and indeed cannot be, patentable under our patent acts; since it is utterly impossible, under such circumstances, to comply with the fundamental requisites of those acts. In a race of diligence between two independent inventors, he, who first reduces his invention to a fixed, positive, and practical form, would seem to be entitled to a priority of right to a patent therefor. Woodcock v. Parker [Case No. 17,971]. The clause of the fifteenth section, now under consideration, seems to qualify that right, by providing that, in such cases, he who invents first shall have the prior right, if he is using reasonable diligence in adapting and perfecting the same, although the second inventor has, in fact, first perfected the same, and reduced the same to practice in a positive form. It thus gives full effect to the well known maxim, that he has the better right, who is prior in point of time, namely, in making the discovery or invention. But if, as the argument of the learned counsel insists, the text of Mr. Phillips means to affirm, (what, I

think, it does not,) that he, who is the original and first inventor of an invention, so perfected and reduced to practice, will be deprived of his right to a patent, in favor of a second and subsequent inventor, simply because the first invention was not then known, or used by other persons, than the inventor, or not known or used to such an extent, as to give the public full knowledge of its existence, I cannot agree to the doctrine; for, in my judgment, our patent acts justify no such construction.

In respect to another point stated at the argument, I am of opinion, that a disclaimer, to be effectual for all intents and purposes, under the act of 1837 (chapter 45, §§ 7, 9) must be filed in the patent office before the suit is brought. If filed during the pendency of the suit, the plaintiff will not be entitled to the benefit thereof in that suit. But if filed before the suit is brought, the plaintiff will be entitled to recover costs in such suit, if he should establish, at the trial, that a part of the invention, not disclaimed, has been infringed by the defendant. Where a disclaimer has been filed, either before or after the suit is brought, the plaintiff will not be entitled to the benefit thereof, if he has unreasonably neglected or delayed to enter the same at the patent office. But such an unreasonable neglect or delay will constitute a good defence and objection to the suit.

The cause was then continued on the motion of the plaintiffs.